## FIRE ASS'N OF PHILADELPHIA v. ONEIDA COUNTY MACARONI CO., Inc.

(Circuit Court of Appeals, Second Circuit. November 5, 1923.)

### No. 38.

1. **Insurance ☞665(4)—Whether insured's officers set fire held for jury.**

   In an action on policy of fire insurance, verdict of jury in favor of plaintiff on issue whether plaintiff's officers set the fire *held* not to be disturbed under the evidence.

2. **Trial ☞173—Parties should be permitted to offer evidence before ruling on its sufficiency.**

   As a general rule in cases not determined by a single central fact the parties should be permitted to offer all their evidence before submitting to a ruling of the court on its sufficiency.

3. **Trial ☞110—Asking of questions in good faith not reversible error.**

   To ask questions in good faith, the purpose of which is debatable, is not reversible error, though of course counsel should not offer in the presence of the jury testimony which he knows is incompetent, and it is wholly improper for him to persist in asking a question which has been excluded, unless the question is excluded as being out of time.

4. **Trial ☞133(2)—Offer of testimony held harmless.**

   In action on fire policy, where defendant claimed plaintiff's officers set the fire, the mere offering of evidence by plaintiff of "black hand" activities *held* harmless, where excluded, and jury cautioned not to be influenced by the offer.

5. **Trial ☞133(2)—Not reversible error to refer to incompetent evidence in opening statement.**

   It is not reversible error to permit counsel in his opening statement to state that he will prove matters which are excluded when offered in evidence, or to state in good faith what he could prove by the questions pro-

pounded to witnesses, which questions the witnesses were not permitted to answer; the jury being instructed to disregard the offer.

6. **Trial ☞133(2)—Questions to witness held harmless, when excluded.**

In action on fire policy, where defendant claimed plaintiff's officers set the fire, plaintiff's questions to investigator for defendant as to whether plaintiff's officers had been convicted of crime, their reputation, presentation of matter to grand jury, etc., if inadmissible, *held* not to require reversal, where they were not answered, and court directed jury to disregard effort to interrogate along that line.

7. **Witnesses ☞363(1)—Interest in controversy proper subject of interrogation.**

Interest of witness in controversy as an employee of one of the parties is a matter on which he may be interrogated, in assisting the jury in determining the credence to be given his testimony and the truth or falsity of his statements.

8. **Trial ☞59(2)—Witnesses ☞225—Order, time, and mode of examining witnesses determinable by judge.**

Trial judge has a right to determine the order in which the evidence shall be introduced by the parties, the time and mode of examining the witnesses, and form and propriety of the questions, the manner in which the questions may be put, and the extent to which the witness may be examined, especially with respect to collateral matters.

9. **Witnesses ☞311—Party as witness may be permitted to testify as to age, residence, activities, etc.**

A party testifying, as a witness may be properly permitted to testify as to age, residence, condition in life, employment, and activities for the purpose of aiding the jury in setting a proper estimate on his testimony, and to explain his connection with the case.

10. **Insurance ☞658—Evidence as to discharge of employees admissible in action on fire policy, where defense incendiarism.**

In action on fire policy, where it appeared fire was incendiary and during trial argument was advanced by defendant that some one must have set fire to the premises, who was familiar with the layout of the plant and the means of gaining access thereto, it was proper to permit plaintiff to introduce evidence as to discharge of employees who went to work in other competing plants, to show that others were familiar with the plant.

11. **Insurance ☞658—Evidence of advice to increase insurance held admissible.**

In action on fire policy, where both parties agreed that the fire was incendiary, and defendant argued and attempted to show that the premises had been overinsured, it was competent for the plaintiff to argue and show, as tending to show good faith, that an insurance agent had advised increasing the insurance, and that it was on his urgent insistence that the insurance was placed.

Mayer, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Oneida County Macaroni Company, Inc., against the Fire Association of Philadelphia. Judgment for plaintiff, and defendant brings error. Affirmed.

Writ of error to the United States District Court for the Northern District of New York.

Ainsworth, Carlisle, Sullivan & Archibald, of Albany, N. Y. (Charles B. Sullivan, of Albany, N. Y., of counsel), for plaintiff in error.

Fuller & Hubbard, of Utica, N. Y. (P. C. J. De Angelis, Moses G. Hubbard, Jr., and Gay H. Brown, all of Utica, N. Y., of counsel), for defendant in error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error insured the defendant in error, a macaroni manufacturer having a factory in Utica, N. Y., against loss by fire on stock and machinery in its macaroni factory. This policy of insurance was for $10,000. The complaint sufficiently alleged the execution of the contract of insurance, the fire, and the loss, and pleaded the fact that a number of other insurance companies insured the premises and property of the defendant in error. It set forth compliance with all conditions precedent to the commencement of the action and alleged a loss as owing from the plaintiff in error of $4,570.17. The answer interposed admitted the issuance of a policy of insurance, the occurrence of the fire, the filing of proof of loss, and the nonpayment of the amount of loss as claimed. As a separate defense, the answer pleads that the fire in question was caused or resulted from the actual procurement of the defendant in error. It sets forth other separate defenses of neglect on the part of the company in the maintenance of its fire prevention apparatus and thus seeks to avoid liability under the policy.

[1] The fire occurred on Sunday morning, August 10, 1919, and both sides concede that it was incendiary in its origin. Inflammable liquid, thought to be kerosene oil, was poured on the floors and on the elevator doors. Doors were open, and held so by props. The sprinkler system was shut off, and the fire was started about 6 o'clock in the morning after the night watchman had left. The identification of the person or persons who caused or procured the fire to be caused was put in issue on the trial by circumstantial evidence. An investigation was made by the police officials of the city of Utica, and apparently no clue was found to the perpetrators of the act. Employees of the National Board of Underwriters made an investigation, the result of which was testified to on the trial. The officers of the corporation consisted of the three Perretta brothers, and a fourth brother was a stockholder, as was one close business associate of the Perretta brothers. The corporation was organized in May, 1917, for the purpose of conducting a macaroni factory, with a capitalization of $36,000. Stock was issued for $12,000, the value of the factory property purchased, and $10,000 was paid in in cash.

At the time of the fire, the factory was equipped with automatic sprinklers, but prior to the fire these had been impaired, apparently intentionally, so that the sprinkler system could not be used. Investigations made reveal beyond question that the fire was of incendiary origin. The plaintiff in error, before the jury, sought to point out the officers of the corporation as the perpetrators of the crime; the theory being that the corporation had a motive in the destruction of the property. It was shown that cans which contained kerosene, and which were similar in type to those used by Rocco Perretta Company, of which the corporation's president was a member, were found about the factory. This partnership dealt in the sale of kerosene at its place of business. The defendant in error, on the other hand, pointed out that cans of this type were in common use, and that many local gro-

cery stores carried kerosene oil. It is pointed out, as a circumstance, that the hour at which the fire occurred was just after the watchman and engineer of the plant left, indicating the choice of a favorable hour to carry out the work of setting the factory on fire. Another circumstance was that the officers and agents of the corporation had means of obtaining access to the premises.

It is argued on behalf of the defendant in error that it was quite natural that they should have. An employee of the defendant in error was found trapped in the burning building when the firemen arrived, and he explained that he went there after the fire started for his watch, which he said was hanging on a post. On the other hand, the defendant in error offered testimony of a woman living in the neighborhood, who said she was looking out of the window for the milkman, and that she saw an automobile drive away with four or five men, who came out of the macaroni factory. The dial of the watchman's time-clock was punched at 5 :44 a. m., and he said he did not punch the clock after 5 a. m., and that he left the factory at 5 :40. From this circumstance, it is argued that the punching of the clock at 5 :44 was obviously done for disproving defendant in error's connection with the causing of the fire, by showing from the time clock dial, which the defendant in error had carefully preserved, that the building was under the care of its watchman until almost the very moment of the fire. The defendant in error answers that the watchman's time clock has no evidentiary value, and was merely kept by it in its effort to preserve the records of the company.

As a motive for the burning, the plaintiff in error says that the insurance obtained greatly exceeded the market value of the property and that the business had become unprofitable. It analyzes the figures and the books of the company in its endeavor to point out the unprofitable state of the business. It likewise points out that at the time of the fire large quantities of its macaroni had been removed to the Seneca Warehouse in the name of Rocco Perretta & Co. and Frank Rossa, another officer of the company. Both of these men were engaged in the retail sale of macaroni, and it was abundantly shown that they were the two largest individual customers of the defendant in error, and had theretofore frequently purchased and stored, in the Seneca Warehouse, large quantities of macaroni. The defendant in error points out that the fire insurance carried on the building was $40,000, and that its actual cash value, with proper reductions for depreciation, was appraised at $45,500. This appraisal was made under an agreement as provided in the policies of insurance covering the building, and the representatives, both of the insurance companies covering the property and the defendant in error, participated in the appraisal. Actual reproduction value was given as over $58,800. The machinery and equipment was covered for $35,000, and its value was fixed at $44,777.51. The stock was insured for $35,000, and up to the time of the fire quantities of stock had been removed. Stock in the factory had a value of considerably over the amount of the insurance. Sales, however, of the stock on hand, had diminished the quantity, so that it had a value of about $23,000 at the time of the fire. No effort

was made to claim more than the actual loss of the stock. Thirty thousand dollars of insurance was carried on use and occupancy.

The plaintiff in error claims that, had the fire actually destroyed the entire plant and the insurance been collected, the defendant in error would have profited by the fire. On the other hand, it is pointed out by the defendant in error that, if totally destroyed, there would have been a loss of over $15,000. On this proof, the trial judge submitted the issue to the jury as a question of fact whether or not the defendant in error, acting through its officers, had caused or procured to be caused the fire in question. The verdict of the jury resolving the question in favor of the defendant in error, we must accept, and, unless there be errors of law, the judgment must be affirmed.

Upon this writ of error it is argued that error was committed by counsel for the defendant in error making prejudicial statements before the jury and in offering evidence regarding "black hand" activities. One Ryan, who investigated the cause of the fire on behalf of the National Underwriting Company, of which the plaintiff in error was a member, gave testimony as to conditions about the factory, all pointing to the fire being of incendiary origin, and further he testified to his activities with the police department and his reports to them, all of which indicated his efforts to detect the perpetrator of the crime. Counsel upon cross-examination, endeavored to interrogate the witness as to whether Rocco Perretta's store had been fired by black handers, and whether he had investigated the claim that the front veranda of Rocco Perretta's house had been blown away with a bomb, or whether he had heard that a certain individual had been convicted and sentenced to prison for writing black hand letters to Rocco Perretta.

Objections to this line of inquiry were sustained, but it is insisted that there was a persistent effort to influence the minds of the jury, when counsel knew that such evidence would not be admitted; that is to say, that Rocco Perretta, the president of the corporation, was marked by black handers and that because of malice toward him the property was destroyed by fire. It was proper to interrogate Ryan as to the extent of his investigations. Such testimony bore upon, not only the credence that should be given thereto, but the truth or falsity of the statement of facts, which his direct testimony portrayed. The only effect of the evidence offered and rejected would be to show that parties other than the defendant in error had a motive to cause this fire. The reason for rejecting the testimony, as given by the trial judge, seems to be that it was immaterial as bearing upon the origin of the fire, and not closely enough connected thereto. The trial court did exclude all testimony that bore upon the subject of black hand activities, and specifically directed the jury to disregard the offer of such testimony as made by the defendant in error.

There is authority for the proposition that the defendant in error may offer evidence, direct or circumstantial, to refute the charge that the insured wrongfully or willfully caused the destruction of his property. Klein v. Franklin Ins. Co., 13 Pa. 247; Orient Ins. Co. v. Moffatt, 15 Tex. Civ. App. 385, 39 S. W. 1013. And testimony that the defendant has made strenuous efforts to convict a plaintiff of arson

may be admissible on his behalf. Phœnix Assurance Co. v. Stenson (Tex. Civ. App.) 63 S. W. 542. When the discussion occurred as to the admissibility of a black hand letter said to have been received by Perretta, the court excused the jurors, and the discussion as to its admissibility took place in their absence. After the jurors returned, the letter was excluded. In excluding the testimony, the court apparently was influenced by the authority of the Appellate Division of the Supreme Court of the state of New York in a suit against another insurance company arising out of this fire. There a judgment for the defendant in error was reversed "on the ground that the evidence in regard to the black hand transaction was improperly received, and that it, in connection with the remarks made in the presence of the jury, constituted error requiring reversal." Oneida County Macaroni Co. v. Newark Fire Ins. Co., 200 App. Div. 853, 191 N. Y. Supp. 942.

[2-4] We need not now discuss the admissibility of this testimony. It is sufficient to say that it was excluded when offered, and the jury was cautioned not to be influenced by the offer of the testimony. As a general rule, in cases not determined by a single central fact, the parties should be permitted to offer all their evidence before submitting to a ruling of the court on its sufficiency. Eckes v. Stetler, 98 App. Div. 76, 90 N. Y. Supp. 473; Garrison v. McCullough, 28 App. Div. 467, 51 N. Y. Supp. 128. To ask questions in good faith, the purpose of which is debatable, is not reversible error. Young v. Fox, 26 App. Div. 264, 49 N. Y. Supp. 634. To do so will not authorize a trial court to withdraw the case from the jury or dismiss the action. Of course, counsel should not offer, in the presence of the jury, testimony which he knows is incompetent, and it is wholly improper for him to persist in asking a question which has been excluded, unless the question is excluded as being out of time. It is harmless error, where the evidence is excluded. During the trial, we think counsel did not unduly persist in interrogating the witness on the same subject-matter, and he is not chargeable with misconduct in attempting to get improper testimony before the jury. It is only where the questions propounded and persisted in convey to the jury improper information, which tends to render the trial unfair, that the question alone is a ground for reversal.

[5] So it is not a reversible error to permit counsel in his opening statement to state that he will prove matters which are excluded when offered in evidence, or to state in good faith what he could prove by the questions propounded to witnesses, which questions the witnesses were not permitted to answer; the jury being instructed to disregard the offer. Where, as here, it is conceded that the fire was of incendiary origin, and an effort was made to fix responsibility therefore upon the officers of the defendant in error, it was not prejudicial to permit the officers to attempt to show that some one else had a motive and desire to destroy the factory, particularly since that testimony was excluded, and the jury cautioned to disregard the effort to prove it.

Error is further assigned for attempting to interrogate the witness Ryan as to whether he recommended arrests in arson cases, and whether the witnesses had heard of a fire being started by competitors, and whether he had ever investigated to find out if Rocco Perretta had been

convicted of a crime, and whether he had looked up the reputation of Rocco Perretta, Frank Rossa, and John Perretta; whether any of these men had been convicted of crime; whether the witness had ever sworn out a warrant for Charlie Chaplin, or had ever requested anybody to swear out an information for his arrest; whether the witness had found out or investigated whether Perretta's store had been fired by black handers; whether he had heard or investigated that the front veranda of Perretta's house had been blown away with a bomb; whether he had heard that an individual had been convicted and sent to prison for writing black hand letters to Rocco Perretta or whether the witness had ever presented the matter of the defendant in error's fire to the grand jury. Answers to these inquiries were excluded. In its answer and at the trial, the plaintiff in error charged the officers of this corporation with burning the building, which, under the state Criminal Code, is arson. Ryan investigated for the association of which the plaintiff in error was a member, and testified to his activities and his assistance and report to the municipal police.

[6, 7] If the questions asked be inadmissible, we cannot say that counsel did not act in good faith in interrogating as to arrests and convictions of the officers of the corporation. If, within the rule laid down by the trial judge, this evidence was inadmissible, the plaintiff in error was accorded full protection by its exclusion and by the direction of the court to disregard the effort to interrogate along this line. Again we may say that Ryan's interests in the controversy—it matters not by whom he was employed—were all matters as to which he might be interrogated, in assisting the jury in detemining the credence to be given to his testimony and the truth or falsity of his statements.

[8, 9] Error is assigned in the receipt in evidence of the testimony of Rocco Perretta called by the defendant in error which in effect stated his age, the time of his arrival in the country, his career showing that he worked in mills, as a bootblack, clerk in a country store, post office official, member of the Child Welfare Board, and director of a civic organization within the county. Matters of a preliminary character, addressed to the witness pertaining to the subject-matter of this line of inquiry, rests largely within the discretion of the trial judge. He has a right to determine the order in which the evidence shall be introduced by the parties, the time and mode of examining the witness, the form and propriety of the questions, the manner in which the questions may be put, and the extent to which the witness may be examined, especially with respect to collateral matters. It was proper that the jury should know who the witness is, and where he is from, and such other matters personal to him as will enable the jury to appreciate his character and form a just estimate of the value of his testimony. Questions which may not be relevant are allowable, if no harm be done. Questions as to age, residence, conditions in life, employment, and activities are directed toward aiding the jury in setting a proper estimate on the testimony of the witness and oftentimes to explain his connection with the case. We find no error in the exercise of this discretion.

[10] Error is assigned to the admission of evidence offered by the plaintiff in error to the effect that some Sicilian employees of the

defendant in error had been discharged and worked for other maraconi factories, and in permitting the testimony of George Perretta, in substance, that competing maraconi manufacturers in Utica went out of business, and that there was price cutting and competition in the macaroni business preceding the fire. During the course of the trial, the argument was advanced by the plaintiff in error that some one must have set fire to the premises who was sufficiently familiar with the layout of the plant and the means of gaining access thereto. The evidence as to discharged employees was offered to show that others were familiar with or had equal knowledge as to these matters and that they were working for competing marcaroni companies in Utica, who were engaged in keen competition. In Worth v. Chicago, M. & St. Paul Ry. Co. (C. C.) 51 Fed. 171, in an action brought for personal injuries by a passenger caused by the derailing of a car, evidence tending to show that the derailment was caused by a tie in the frog of a switch was offered and that shortly before the accident, four persons were seen upon the track in close proximity, who seemed to avoid other persons walking along the track. Evidence was further offered to show that there was a camp nearby, where persons were who had been employed in the repairing of the tracks, but who had been discharged, which might have caused ill feeling. It was held that it was competent to prove the presence of this gang, and that shortly before some made threats against the company, and that one of them said he could ditch the train. This testimony offered on behalf of the defendant in error was a circumstance which the jury might consider. Indeed, it is from circumstances such as these that plaintiff in error sought to have the inference drawn that the defendant in error had caused the fire. The motive of a third person as evidence is perhaps of not such value as a threat, but the courts are inclined to receive it. There is no reason for requiring that it be coupled with other evidence known to make it admissible. Wigmore on Evidence, § 141.

[11] Error is assigned in the admission of evidence of one Doyle, an insurance agent, who placed the insurance on the building in question, to the effect that he advised the defendant in error to increase this insurance on the building some time before the fire. The plaintiff in error argued on the trial, and attempted to show, that the premises had been overinsured. It was competent for the defendant in error to answer this claim and argument by showing that an insurance agent had advised increasing the insurance, and it was upon his urgent insistence that the insurance was placed. It tended to show the good faith of placing the additional insurance.

The claim is advanced that the loss was appraised after taking into consideration the inventory made January 1, 1919, adding thereto such purchases as were made, and deducting therefrom the sales made; the claim being that there was no proper proof of the correctness of the inventory. One of the Perrettas testified that the inventory was taken under his personal supervision, and he checked up the items, and that he knew of his own knowledge such inventory was correct. We find nothing justifying the claim of error in the receipt of evidence tending to prove the loss.

We find no exception to the remarks of counsel in the summation which now require a reversal for their unfair and prejudicial character. We think that counsel might have kept within more appropriate restraint in his remarks. The court cautioned the jury to be guided by the evidence, and not the remarks of counsel. Forensic ardor, bringing forth in extemporaneous and animated argument phrases such as are found in this summation, do not amount to error of law; but, if anything, error of judgment of trial counsel, and a subsequent marring of the victory.

We find no error requiring a reversal of the judgment.

Judgment affirmed.

MAYER, Circuit Judge. I dissent, because I think the defendant did not have a fair trial. The constant repetition by trial attorney for plaintiff of questions to which objection was made and sustained constituted error. This is particularly true in respect of the effort to interject the theory that the fire was due to so-called black hand enemies of plaintiff, when there was not a particle of admissible testimony to sustain this theory. I think this record shows plainly that it was the deliberate intention of the trial attorney of plaintiff to lead the jury away from the true issues and to create an entirely wrong impression as to the cause of the fire.

In such circumstances, the trial judge is confronted with a difficult problem. He usually realizes the lost time and expense occasioned by the withdrawal of a juror, and he usually attempts, as was done in this case, to cure the situation by careful and earnest instructions to the jury to disregard the irrelevant matters which the trial attorney drags into the case. In the case at bar I think the efforts of the trial judge did not succeed in correcting the injury done, and I feel that, although this case has been much litigated, it is far better to have another trial, so that laymen realize that the courts seek to assure justice, and do not permit a jury verdict, extracted by unfair methods to stand unassailed.

I vote to reverse.