**ELGI HOLDING, INC., Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellee.**

No. 586, Docket 74–2002.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1975.

Decided Feb. 28, 1975.

---

F. Bernard Hamsher, Buffalo, N. Y., for appellant.

Richard E. Moot, Buffalo, N. Y. (Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y., on the brief), for appellee.

Before LUMBARD, HAYS and MULLIGAN, Circuit Judges.

PER CURIAM:

Plaintiff Elgi Holding Inc. [Elgi] appeals from a judgment entered July 3, 1974, in the Western District, John T. Curtin, C. J., following a jury trial and verdict in favor of defendant Insurance

Company of North America [INA]. We affirm.

Elgi brought this action against INA in state court for $212,960 alleging that amount was due it under two INA insurance policies that covered an office-warehouse structure in Buffalo which was completely destroyed by fire in the early morning hours· of May 7, 1972. INA removed the case to the district court and alleged a defense of fraud, claiming that Lester Hall, Elgi's owner, had caused the fire to be set as part of an attempt to obtain the insurance proceeds in order to alleviate his precarious financial situation.

■ Direct proof of arson is seldom available, so courts have long recognized that it can be established in civil cases by circumstantial evidence. See, e. g., Fratto v. Northern Insurance Co., 242 F.Supp. 262, 271 (W.D.Pa.1965), affd., 359 F.2d 842 (3d Cir. 1966). Here there was sufficient evidence to sustain the jury's verdict. INA offered two expert witnesses to explain the cause of the fire. William Alvine, a professional fire analyst, testified that his observations of the scene led him to conclude that the fire was a low-burning fire that had spread rapidly throughout the structure. He thought that the fire had been accelerated by the use of a flammable substance. He also stated that his conclusions were verified by a laboratory report which indicated the presence of gasoline in debris taken from the burned building. John F. Fitch, a fire investigator for the Buffalo Fire Department, also testified that the fire had rapidly engulfed the building, probably through the use of an accelerant. Elgi's counter evidence established only that no criminal charges of arson had been brought.

INA also offered evidence as to Hall's financial status. It showed that a bank had threatened to foreclose the mortgage on the warehouse immediately prior to the fire because Hall had missed eight consecutive payments (totaling in excess of $9,000). In addition, INA showed that Hall had obtained $33,000 in income continuation insurance on the building immediately prior to the fire

(May 3), that he had written many bad checks in the four months preceding the fire and that he had outstanding judgments and liens against him at the time of the fire.

Hall denied that he had any role in the fire. However, a reading of the transcript discloses that Hall's testimony was often contradicted by other evidence. Thus, the jury could choose to disbelieve his denial of complicity in the fire.

We think the above evidence, which established that the fire was incendiary in nature and that Hall had a motive to cause it, is such that we cannot say that reasonable men could not conclude Hall caused the fire. Consequently, the jury's verdict should stand. See Hanover Fire Ins. Co. v. Argo, 251 F.2d 80, 82 (5th Cir. 1957); Fire Assn. v. Oneida County Macaroni Co., 294 F. 633, 635–37 (2d Cir. 1923) (upholding jury verdicts).

■ Elgi argues that the trial court improperly admitted evidence concerning Hall's financial difficulties after the fire. Since Hall had attempted to establish himself as a well-to-do and successful businessman at the time of the trial, this evidence was properly admitted as relevant to the question of motive and to attack Hall's credibility regarding his financial situation.

■ Elgi argues next that the court erred in allowing Alvine to refer to the lab report because the report was not a business record and because the person who conducted the tests was not available for cross-examination. While Elgi may be technically correct in its claim of error, see C. McCormick, Evidence § 15 (2d ed. 1972); see, however, Fed.R.Ev. 703 (effective July 1, 1975), we are not persuaded to reverse the jury's verdict in this civil case on this ground as Elgi was not prejudiced by the reference to the report.

Elgi had the opportunity to (and did) attack the validity of the tests performed by the laboratory through cross-examination of Alvine and introduction of a chemist's testimony in its rebuttal case. Moreover, Alvine testified that his opinion that the fire had been accelerat-

ed by use of a flammable liquid was not based on the report but rather on his examination of the burned premises. The report only offered verification for the opinion he had already reached independently. Investigator Fitch had arrived at a conclusion similar to Alvine's after his inspection of the premises. The only witness called by Elgi who discussed the cause of the fire indicated that its origin was suspicious. In light of the considerable evidence that the fire was incendiary, and the lack of any evidence suggesting an accidental cause, the reference by Alvine to the lab report cannot be said to have prejudiced Elgi.

Finally, Elgi argues that it was prejudiced because the trial judge allowed it only ten minutes to present its rebuttal witness. We do not agree. It appears from the record that the judge's statement was only a general exhortation to the lawyers to finish the case quickly as it was late on a Friday afternoon. In any event, Elgi's counsel made no protest and a reading of the record indicates that he had ample time in which to question his witness, who was called solely for the purpose of attacking the scientific validity of the procedures followed by the laboratory whose report had been referred to by Alvine.

Affirmed.