CORA PUB, INC., etc., et al.,
Plaintiffs-Appellees,

v.

CONTINENTAL CASUALTY CO., etc.,
Defendant-Appellant,

Irving Rubin et al.,
Intervenors-Appellees.

MOSS AND SON, INC.,
Plaintiff-Appellee,

v.

CONTINENTAL CASUALTY
COMPANY,
Defendant-Appellant,

Irving Rubin et al.,
Intervenors-Appellees.

No. 77–3065.

United States Court of Appeals,
Fifth Circuit.

June 19, 1980.

Greene & Cooper, P. A., Robyn Greene, Miami, Fla., for Continental Cas. Co.

Edward Perse, Miami, Fla., for Cora Pub, Inc.

Evan Langbein, Alan E. Greenfield, Miami, Fla., for Moss and Son, Inc.

Cassel, Benjamin & Chotiner, William Cassel, Miami, Fla., Joseph G. Gubman, New York City, for Irving Rubin, et al.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The Coral Way Pub of Miami, Florida was totally destroyed by fire in May 1975. Continental Casualty Co., the insurer, suspected arson by the lessee and refused to pay any claim on the loss. Subsequently the lessee of the restaurant, Cora Pub, Inc., instituted this action against Continental on the policy. Other parties having an interest in the property and insurance policy joined the action. seeking their share of any insurance proceeds.[1]

---

1. A suit instituted by plaintiffs Moss and Son, Inc. against Continental was consolidated with this action. Irving Rubin, Saul Kaplan, Joseph Gubman and Walker Sitomer intervened.

The district court directed a verdict against Continental's arson defense and submitted the issue of damages to the jury, which returned an award of $409,000 in favor of Cora Pub and the intervenors. On appeal, Continental contends that the evidence that Cora Pub committed arson was sufficient to create a question for the jury, and that a directed verdict against the arson defense was improper. Cora Pub argues in reply that the evidence was sufficient neither to prove that there was arson nor to prove that arson was committed by any individual whose actions could be imputed to the corporation. Joining Cora Pub against Continental on this issue are the owner/landlord Moss and Son, Inc., and mortgagees Irving Rubin, Saul Kaplan, Joseph Gubman and Walker Sitomer—but the principal position of these appellees is that regardless of whether the lessee committed arson, their interest in the insurance policy is unimpaired.

Continental also contends on appeal that the district court erred in striking a fraudulent concealment defense which was based on the failure of Cora Pub to disclose the criminal record of one of its principal officers. Lastly, Continental cites a number of errors in the proof of damages. For the reasons which follow, we agree with Continental that the arson defense should have been submitted to the jury and that error was committed in the proof of damages, and therefore we reverse the judgment and remand the case to the district court for retrial.

I. THE ARSON DEFENSE.

 As the district court disposed of Continental's arson defense by directed verdict, the standard of review on appeal is a demanding one. A motion for directed verdict should be granted only if the court believes "that reasonable men could not arrive at a contrary verdict . . . ." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969). In making this determination, the court must examine the whole record in the light most favorable to the party opposing the motion. *Id.* Viewed in that per-spective, the record in this case reveals substantial evidence to support Continental's allegation of arson committed by Cora Pub.

The Coral Way Pub was a 27 year old restaurant owned by Moss and Son, Inc., and leased and managed by numerous different parties over its life. In November 1974, Cora Pub acquired the lease and continued to manage the restaurant until it was destroyed half a year later.

Throughout Cora Pub's brief management, the restaurant operated at a loss. At the time of the fire in May 1975, Cora Pub had current liabilities of $66,751.84, a mortgage of $207,416.67, and an indebtedness for loans from its officers totaling $51,-291.20. During the month of the fire, six of Cora Pub's checks bounced, and after the fire the Internal Revenue Service filed a $15,000 lien against Cora Pub for failure to pay withholding taxes on wages of employees.

The restaurant had been damaged by fire in February 1975, and on this occasion Continental paid $18,000 on a claim by Cora Pub. The following month, Cora Pub president and chief stockholder John Barbero put the business up for sale.

At 2:00 A.M. on the night of the fire that led to this claim, a passer-by noticed smoke coming from the restaurant, and then observed an unidentified man walk from the parking lot behind the restaurant to a car parked at a nearby gas station, and drive away. The passer-by immediately notified the fire department, but the building burned rapidly to ruin after several explosions. A fireman who arrived at the scene found the doors to the building unlocked.

Julian Kirsch—general manager, secretary, and treasurer of Cora Pub—was the last person to leave the restaurant on the night of the fire, although he testified that he had locked and left the building at 11:00 P.M. and was home with a girl when the fire started. Earlier, the burglar alarm system for the restaurant had been disconnected, and although Kirsch had been informed of this fact, he gave a statement after the fire that he had set the alarm before leaving the restaurant.

All of Cora Pub's business records, including much important evidence of the actual financial loss suffered, have vanished. Kirsch testified at trial that the records were destroyed in the blaze, but a fireman who had been at the scene testified that the fire never reached the office where the books and records were kept.

Frank Ogden, a lieutenant with the Dade County Fire Department and an expert in arson investigation, testified that in his opinion the fire was of incendiary origin. His opinion was formed from his inability to find any possible accidental cause in the area where the fire began together with the rapidity with which the building had burned.

Though the case for arson is wholly circumstantial, we cannot deny that reasonable men might draw the inferences necessary for Continental's arson defense. In a host of similar cases where sufficient motive and opportunity of the insured to commit arson were combined with proof of an incendiary cause of fire, this court and others have considered the arson defense to be supportable by inference. *Sullivan v. American Motorist Ins. Co.*, 605 F.2d 169 (5th Cir. 1979); *Crown Colony Distributors, Inc. v. United States Fire Ins. Co.*, 510 F.2d 544 (5th Cir. 1975); *Hanover Fire Ins. Co. of New York v. Argo*, 251 F.2d 80 (5th Cir. 1958); *Don Burton, Inc. v. Aetna Life & Cas. Co.*, 575 F.2d 702 (9th Cir. 1978); *Elgi Holding Inc. v. Insurance Co. of North America*, 511 F.2d 957 (2d Cir. 1975); *Stein v. Girard Ins. of Philadelphia*, 259 F.2d 764 (7th Cir. 1958).

Cora Pub contends, however, that the evidence of arson in this case is worse than merely circumstantial. It characterizes Continental's arson defense as built on an impermissible pyramiding of inferences.

The rule against inferences upon inferences is frequently overstated as absolutely prohibiting the drawing of one inference from another.[2] Behind the rule is the thought that unless the first inference is certain, the improbability of the second inference is compounded. Consistently enforced, however, the rule would make proof by circumstantial evidence virtually impossible, since most generally accepted inferences may be dissected into intermediate inferences. Like Achilles of Zeno's paradox, we might never reach a conclusion. Wigmore offered the following examples in a refutation of the rule against inference upon inference:

> [O]n a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of this design. In these and innumerable daily instances we build up inference upon inference, and yet no Court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon.

1 Wigmore on Evidence, § 41, at 435–36 (3d ed. 1940).

■ While it is routinely said in criminal cases that guilt may not be proven by infer-

---

**2.** In *Standard Accident Ins. Co. v. Nicholas*, 146 F.2d 376 (5th Cir. 1944), for example, it was stated in dicta that "a case cannot be established by piling one presumption or inference upon another presumption or inference." However, the court had no need to invoke the rule since it found no evidence to support the first inference from which the ultimate conclusion was drawn.

In *Hunter v. Shell Oil Co.*, 198 F.2d 485 (5th Cir. 1952), another panel of this circuit stated, again in dicta, that "an inferred fact may not be used as a basis for a further inference thereby extending a chain of inferences into the realm of pure conjecture," but then concluded that the case before it did not present such a problem.

ence upon inference, *e. g., United States v. Aguiar*, 610 F.2d 1296, 1304 (5th Cir. 1980), the practice in civil cases is to evaluate the probative value of every inference on its own merits. The modern view of the rule against inference upon inference was well-summarized by Judge Wisdom in *NLRB v. Camco, Inc.*, 340 F.2d 803, 811 (5th Cir. 1965).

> The so-called rule against pyramiding inferences, if there really is such a "rule" and if it is anything more than an empty pejorative, is simply legalese fustian to cover a clumsy exclusion of evidence having little or no probative value.

*See also Smith v. General Motors Corp.*, 227 F.2d 210, 213 (5th Cir. 1955); *Alman Bros. Farms & Feed Mill, Inc. v. Diamond Lab., Inc.*, 437 F.2d 1295 (5th Cir. 1971).

In the case before us, as in most arson cases, the incendiary origin of the fire was proved by circumstantial evidence, including the rapidity with which the building was observed to burn, the lack of any discoverable accidental cause of fire where the fire began, and the suspicious activity of the unidentified man seen at the restaurant immediately after the fire began. To reach the ultimate hypothesis sought to be proved requires another inference, joining the fact of the corporation's motive to commit arson with the opportunity of one of its principal figures, to arrive at the conclusion that Cora Pub intentionally destroyed the building.

There is nothing inherently wrong with this method of proof. The same series of inferences was necessarily followed in *Sullivan v. American Motorists Ins. Co., supra*, and *Crown Colony Distributors, Inc. v. United States Fire Insurance Co., supra*. The important question is whether the inference is reasonably well supported by the evidence. We must judge the inference as we would any other, taking into consideration that its probability may be attenuated by each underlying inference. Having examined the record carefully, we find the evidence sufficient to create an issue for the jury.

Cora Pub's second line of defense, and the district court's alternative ground for directed verdict, is that even if Kirsch kindled the fire that destroyed the building, his criminal act cannot legally be imputed to the insured corporation. This argument seems to confuse two entirely separate issues, one being whether there is sufficient circumstantial evidence of corporate complicity to require a jury verdict, and the other being whether Kirsch's actions must be regarded as those of the corporation as a matter of law.

■ In no case can arson be attributed to a corporation unless it is established that the perpetrator acted with the corporation's assent. *Owl & Turtle, Inc. v. Travelers Indemnity Co.*, 554 F.2d 196 (5th Cir. 1977). Of course, since the corporation has no physical existence, it can only act through its officers and agents. Moreover, proof of corporate assent to arson, like proof of any other conspiracy, is not likely to be found in the archives of the corporation. Hence, courts have permitted insurers to attribute arson to a corporation by a variety of methods other than proof of a formal grant of authority to the arsonist.

Where the individual arsonist owns all or substantially all of the stock of the corporation courts have pierced the corporate veil to treat the actions of the individual as those of the corporation. *E. g., General Electric Credit Corp. v. Aetna Cas. & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970). Where arson was committed for the benefit of the corporation by an officer or general manager who dominated corporate affairs, courts have often imputed the arson of the individual to the corporation, on the ground that when the owners entrust the business to one person, they should be bound by his actions. *E. g., Kimball Ice Co. v. Hartford*, 18 F.2d 563 (4th Cir. 1927). This theory of the law was repudiated in *Owl & Turtle*, a diversity case governed by Florida law.

In a third category of cases, courts have permitted the jury to decide from circumstantial evidence that the arsonist acted at the request or with the approval of the insured corporation. *E. g., Don Burton,*

*Inc. v. Aetna Life & Cas. Co.*, 575 F.2d 702 (9th Cir. 1978); *Crown Colony Distributors, Inc. v. United States Fire Ins. Co.*, 510 F.2d 544 (5th Cir. 1975); *Jamaica Time Petroleum, Inc. v. Federal Ins. Co.*, 366 F.2d 156 (10th Cir. 1966). *Cf., Sullivan v. American Motorist Ins. Co.*, 605 F.2d 169 (5th Cir. 1979) (insurer not required to identify arsonist; jury may infer from circumstantial evidence that arsonist acted for insured individual). These cases typically involve closely-held corporations in which principal officers, stockholders or general managers are implicated in the fraud. In *Crown Colony*, for example, a panel of this circuit upheld a jury verdict finding a corporation responsible for the arson based on the financial plight of the corporation, overinsurance of the building, and circumstantial evidence linking the manager and the son of the president to the fire and to an attempted destruction of corporate records.

■ Cora Pub cites *Owl & Turtle* as a comparable case in which the court held that as a matter of law, arson could not be attributed to the corporation. In that case, however, the insurer stipulated that the sole stockholder was completely innocent of the attempted fraud, and alleged only that the stockholder's son, who dominated corporate affairs, had procured the burning of the building. In the case before us, there is no stipulation of the owner's innocence. To the contrary, Continental implicated the owner by introducing evidence of his effort to withdraw from the business. There is also evidence of intentional destruction of corporate records, and of the corporation's financial suffering. While Kirsch's relationship to the corporation and the owner do not require that we hold as a matter of law that he personified the corporation, the fact that arson was committed by an agent and officer of the corporation is evidence of the corporation's complicity. 2 Wigmore on Evidence § 280, at 128–31 (3d ed. 1940).

The viability of the interests of the intervenors in the insurance policy in the event of a verdict in favor of Continental after retrial is a separate question which was avoided by the district court by its directed verdict for Cora Pub. We make no decision at this time concerning the severability of the intervenors' rights from those of Cora Pub under the policy.

## II. THE FRAUDULENT CONCEALMENT DEFENSE.

■ Continental also appeals from an order of the district court striking the defense that Cora Pub fraudulently concealed the criminal record of John Barbero, president and chief stockholder. We hold that the defense was properly stricken.

■ Continental concedes that it never inquired as to the criminal records of the officers and stockholders of Cora Pub when it accepted Cora Pub's application for insurance. This being the case, Continental could avoid the policy only by proving that the concealment was intentional, fraudulent, and material to the risk assumed. *Roess v. St. Paul Fire & Marine Ins. Co.*, 383 F.Supp. 1231 (M.D.Fla.1974); *Massachusetts Bonding & Ins. Co. v. Hoxie*, 129 Fla. 332, 176 So. 480 (1937). To prove fraud, it is not enough to show that the concealed information was of a fact which made the covered risk marginally more likely to occur. The insured is entitled to presume that the insurance application asks all questions relevant to the insurer's decision to issue a policy. 9 Couch, Insurance (2d ed. 1968) § 38:72.

In the exceptional Florida cases cited by Continental that allowed the defense of fraudulent concealment despite the insurer's failure to inquire, the concealed fact was that the risk had already occurred, or that forces reasonably certain to cause the risk to occur were underway. *See, e. g., Roess, supra* (lawsuit pending when insured applied for coverage against malicious prosecution liability); *National Life Insurance Co. v. Harriott*, 268 So.2d 397 (Fla.App. 1972) (husband knew of wife's cancer when he applied for insurance on her life). Where, as here, the nondisclosure is of a fact only logically relevant to an insurer's decision to issue a policy, and the insured has not employed any subterfuge to avoid inquiry, the nondisclosure is not a concealment and cannot have been fraudulent.

## III. PROOF OF BUSINESS INTERRUPTION LOSS.

■ To support its insurance claim for interruption of business losses, Cora Pub relied primarily on the testimony of accountant Phillip Paul, who testified that Cora Pub had suffered a business interruption loss of approximately $20,000 a month. Continental's objection that Paul had used an erroneous formula was overruled by the district court.

The Continental policy provided that the insurer would pay:

Loss of earnings sustained, less operating expenses which do not necessarily continue, during necessary interruption of business. . . . Earnings are defined as net profit plus payroll expenses, taxes, interest, rent and all other operating expenses earned by the business.

It is important to note that noncontinuing business expenses are to be subtracted from the sum of operating expenses plus net profit—*not* from gross earnings. The purpose of the formula is to place the insured in the same financial posture it would have had if not for the casualty. *See Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.*, 303 Minn. 267, 227 N.W.2d 789, 793 (1975).

Nevertheless, the district court allowed the witness to offer an opinion founded on projected gross earnings minus non-continuing expenses. Had Cora Pub been unquestionably profitable, this variation from the terms of the policy would have been of no consequence, but in fact Cora Pub had never shown a profit. Paul's opinion was developed from a clearly erroneous interpretation of the policy and should have been stricken from the record.

Continental also protests that much of Paul's opinion rests on assumptions never established by evidence. While many of Continental's criticisms of Paul's reasoning would ordinarily present simple questions of fact for the jury, in this case they underline the importance of another error of the district court—the limitation of Continental's right of cross-examination.

The foundation of Paul's opinion was a financial statement prepared by Jack Dobish. When the Cora Pub called Dobish as a witness to lay the predicate for admitting the statement into evidence, the court barred Continental from any cross-examination as to the method of preparation. The court further ruled that Continental could question Dobish about the preparation of the statement only if it called Dobish as its own witness, and that Continental would be bound by Dobish's testimony.

■ Dobish's financial statement was a summary of unspecified financial records of Cora Pub. As such, it was admissible only if opposing counsel was offered the right to cross-examine the person who prepared the summary. *Wright v. Southwestern Bank*, 554 F.2d 661 (5th Cir. 1977); *McDaniel v. United States*, 343 F.2d 785 (5th Cir. 1965). To deny Continental this right was reversible error.

## IV. APPRECIATION OF AMOUNT OF INSURANCE.

Continental argues lastly that the district court erred in allowing the value of the policy to appreciate one percent per quarter to the date of verdict, rather than to the date of loss as provided by the policy. We agree that the court's action was contrary to the clear terms of the appreciation clause.

■ The amount recoverable under the policy is limited "to the extent of actual cash value of the property *at the time of loss.*" (emphasis added). An endorsement provided that the amount of insurance applying to the building would be increased automatically at the rate of one percent per quarter. Thus, under those terms, the amount recoverable was the value of the building, but in no case greater than the amount of insurance on the building, at the time of the loss.

Another endorsement provided that the amount recoverable "is amended from actual cash value to replacement cost." Cora Pub and the intervenors contend that the shift from cash value to replacement cost

resulted in a new time frame for appreciation of value. They reason that since the policy was amended to use replacement cost as the standard of measure for damages, appreciation must be allowed to the date of verdict when funds are released for reconstruction. The clear language of the policy, however, ineluctably sets the date of loss as the point in time at which damages are determined. By extending the commercial appreciation of the policy to the date of the verdict, the district court increased the amount recoverable beyond what could properly be allowed under the policy terms.

REVERSED and REMANDED.