Was it error for the trial court to grant an insured's motion for a directed verdict as to his insurer's affirmative defenses of arson, willful concealment of facts, or misrepresentation? That is the critical question presented by the insurer's appeal.
The facts, succinctly stated, are as follows:
Appellee Jim Stone was the operator of a nightclub in Huntsville which was damaged by fire. Great Southwest Fire Insurance Company refused to cover the loss caused by the fire.
Stone filed suit in which he sought recovery for the damage he claimed he suffered. Great Southwest filed a general denial and, in addition, asserted defenses of willful concealment and misrepresentation by Stone, and alleged that Stone was guilty of arson which resulted in the damage to the property.
The insured, in his brief on appeal, argues why he thinks that the action of the trial court in directing a verdict on his insurer's affirmative defenses was proper. He argues:
 The standard by which the trial court must determine the propriety of granting a motion for a directed verdict is the scintilla rule. ARCP 50 (e). A directed verdict may not be given where the evidence is open to a reasonable inference of a material fact unfavorable to the moving party. Alford v. City of Gadsden, 349 So.2d 1132 (Ala. 1977). Stated another way, where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the party opposing the motion, and it is only where the facts are such that reasonable men must draw the same conclusions from them that the issue becomes one of law for the court to determine; otherwise, the question is one of fact for determination by the trier of *Page 900 
facts. ARCP 50 (e); Draughon v. General Finance Credit Corp., 362 So.2d 880 (Ala. 1978).
 It is not necessary for the insurer to prove the defense of arson beyond all reasonable doubt, but a preponderance of the evidence suffices. Such proof may be made by circumstantial evidence, if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence. Appleman, Insurance Law and Practice § 12682, pp. 89-90. To sustain the defense of arson, the insurer, when relying on circumstantial proof, must present evidence which is so convincing that it will sustain no other reasonable hypothesis but that the plaintiff was responsible for the fire. Wallace v. State Farm Fire and Casualty Insurance Company, 345 So.2d 1004
(La.App. 1977), Sumrall v. Providence Washington Insurance Company, 221 La. 634, 60 So.2d 68 (1952). Evidence which affords nothing more than mere speculation, conjecture, or guess is wholly insufficient to warrant submission of the case to the jury. Headrick v. United Insurance Company of America, 279 Ala. 82, 181 So.2d 896 (1966); Talbert and Sharkey, Inc. v. South Carolina Ins. Co., (La. 1967), 200 So.2d 10; Jamaica Time Petroleum, Inc. v. Federal Ins. Co., 366 F.2d 156 (10th Cir. 1966), cert. denied 87 S.Ct. 753, 385 U.S. 1024, 17 L.Ed.2d 674. See also Pacific Fire Ins. Co. v. Overton, 256 Ala. 400, 55 So.2d 123 (1951). The scintilla rule as to evidence does not conflict with the above rule that speculation cannot support a verdict. Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814 (1923).
 To establish a prima facie case of arson for the purpose of denying coverage under the fire policy, the defendant would have to prove by competent and relevant evidence arson by someone, motive by the plaintiff and unexplained surrounding circumstantial evidence implicating the plaintiff. Lawson v. State Farm Fire and Casualty Ins. Co., 585 P.2d 318
(Colo.App. 1978); Cora Pub, Inc. v. Continental Casualty Company, 619 F.2d 482 (5th Cir. 1980).
The insurance company contends that where there is some evidence to support its special plea that the insured willfully burned the property covered by the policy, then the question should be submitted to the jury. The company cites GreatAmerican Insurance Company v. Dover, 221 Ala. 612, 130 So. 335
(1930), and American Insurance Company of Newark, N.J. v.Fuller, 224 Ala. 387, 140 So. 555 (1932). The insurance company contends that proof of arson may be made by circumstantial evidence and that "cases of this nature consist almost wholly of circumstantial evidence." Raphtis v. St. Paul Fire andMarine Insurance Company, 86 S.D. 491, 198 N.W.2d 505 (1972). In short, the company contends that there was ample evidence from which the jury could have inferred that Jim Stone committed arson and was responsible for the fire that damaged or destroyed the insured property. In support of its contention, the company argues:
 That the fire in question was of incendiary origin and the result of arson by some party cannot be in doubt. The evidence offered at trial regarding the origin of the fire showed, without contradiction, that there were actually four fires set at different locations within the building and originated from plastic containers containing gasoline or a similar substance. Such a circumstance did not result from accident and no other cause for the fire was offered.
 The evidence connecting Jim Stone with the arson and from which opportunity to commit the arson could be inferred was extensive. First, Jim Stone and his girlfriend were the last persons to have left the club prior to the fire and at the time they left no one else was present and they locked the doors before leaving. The last person to leave the building before a fire creates a circumstance which courts have deemed important to arson cases. Raphtis v. St. Paul Fire and Marine *Page 901 Insurance Company, supra. Stone left the club at approximately 3:00 A.M. The fire was discovered at 4:28 A.M. and was considered to have been burning for approximately one to one and a half hours prior to the time of discovery. Therefore, Stone, by his own testimony, would have been on the premises during the period of time in which the fire could have been started. Again, this is a factor that courts have considered to be of importance in arson cases. Crown Colony Distributors, Inc. v. United States Fire Insurance Company, 510 F.2d 544 (5th Cir. 1975); Lawson v. State Farm Fire and Casualty Insurance Company, 585 P.2d 318 (Colo.App. 1978).
 There was ample evidence from which the jury could have believed that the person or persons who committed the arson had a key to the premises. When the fire department arrived at the scene the doors to the building were locked and forcible entry was required. Although one opening was found in the attic area, this opening, on the outside of the club, was ten to twelve feet from the ground, no means of reaching the opening from the ground was found on the outside of the building and there was no evidence that anyone had crawled the considerable distance through the attic from the outside opening to the interior opening. In short, the jury could easily have inferred that this opening was not used as a means of entry and exit by anyone committing the arson. Jim Stone and his girlfriend were the only persons who had keys to the club. Quite naturally, the question of access is of great importance and, again, courts have taken notice of the existence and whereabouts of keys where the access to a premises has been limited. Gregory's Continental Coiffures and Boutique, Inc. v. St. Paul Fire and Marine Insurance Company, 536 F.2d 1187 (7th Cir. 1976); Stein v. Girard Insurance Company of Philadelphia, Pa., 259 F.2d 764 (7th Cir. 1958); Esquire Restaurant, Inc. v. Commonwealth Insurance Company of New York, 393 F.2d 111 (7th Cir. 1968).
 Additionally, the testimony revealed that an emptied gas can was found on the insured premises and that the burglar alarm was inoperative.
 With regard to the third element of motive, there was again ample evidence from which the jury could infer a motive on the part of Jim Stone to burn the property. The proof of loss filed by Stone claimed $30,338.18. Stone had originally paid $6,475.00 to the owners of the club and had agreed to assume certain debts. As previously listed the debts incurred or assumed by Stone totaled approximately $10,000.00. Based upon the testimony of John Erskine Moore, Willy Phillips and Jim Stone, it appears that Stone invested approximately $5,300.00 in constructing the dance floor and making improvements to the building. This would be a total investment of approximately $21,000.00. Therefore, had Stone decided, for whatever reason, that he would prefer to have cash money, then, assuming he collected the full amount of his proof of loss, he could have realized a profit of approximately $9,000.00
 However, the strongest evidence indicating motive on the part of Jim Stone is the testimony of David Milly. Stone testified that the fair market value of his dance floor was $15,000.00 although he had an actual investment in the dance floor of only $2,700.00. Stone, according to David Milly, attempted to obtain with the payment of drugs fake invoices to be supplied to Great Southwest Fire Insurance Company. Had David Milly cooperated with Jim Stone in this regard and had fake invoices been prepared that would have substantiated a value of $15,000.00 for the dance floor in question, then Jim Stone could have immediately realized a profit of $12,300.00 even if the dance floor had been the only property destroyed. Had he so desired, these proceeds would have been more than sufficient to have eliminated his existing indebtedness. The fact that David Milly refused to cooperate with him does not eliminate the suggested scheme as a motive for the arson. *Page 902 
 Thus, the evidence would support three different motives that Jim Stone could have had for burning the property in question. First, the evidence would support the inference that he simply desired to obtain cash and realize a profit on his original investment. Secondly, had his effort to obtain fake invoices worked, he could have realized an even greater profit on his investment by means of the inflated value of the dance floor. Thirdly, even had he desired to remain in business, the use of the fake invoices would have provided him with a means of repairing any damage done while at the same time realizing a sufficient profit to eliminate his debt or to provide cash money for his pocket.
 It is clear from the foregoing that there was ample evidence from which a jury could have inferred the existence of the necessary elements of the defense of arson. Evidence of a similar nature has previously been held sufficient for consideration by the jury. Don Burton, Inc. v. Aetna Life and Casualty Company, 575 F.2d 702 (9th Cir. 1978); Lawson v. State Farm Fire and Casualty Insurance Company, supra; ELGI Holding Company Inc. v. Insurance Company of North America, 511 F.2d 957 (2nd Cir. 1975); Stein v. Girard Insurance Company of Philadelphia, Pa., supra.
The insured, on the other hand, claims that "there was no credible proof whatsoever that Jim Stone had any reason to destroy his own business." The insured claims that the record shows that "he was an intelligent, productive worker and an innovative, successful club manager." He also contends that the record is uncontroverted that the business was a failure before he took it over and that "within two months, the uncontroverted proof shows that the club attendance was so good that there was standing room only. . . ." Insured contends basically that all of the facts on the issue of motive presented by the insurance company were circumstantial, and that "[g]iven these facts, there are no controverted issues of fact upon which reasonable men could differ as to plaintiff's motive to burn the building and the plaintiff was due a directed verdict as to defendant's defense of arson. 5A Moore's Federal Practice, ¶ 50.02 (1) (2d Ed. 1974); Alabama Power Company v. Taylor, 293 Ala. 484,306 So.2d 236 (1975); Deal v. Johnson, 362 So.2d 214 (Ala. 1978);Wagnon v. Patterson, 260 Ala. 297, 70 So.2d 244 (1954);Progressive Casualty Insurance Co. v. Blythe, 350 So.2d 1062
(Ala.Civ.App. 1977)."
The insured addresses the insurance company's argument that he had an opportunity to commit the arson as follows:
 It [the insurance company] does not offer to explain how it could make out a defense of arson by proving opportunity without motive. Neither does it show that the circumstances as proved are without an equally probable inference of innocence.
We have set out extensively the arguments of both sides in this case in an effort to show that, under Alabama law, the direction of a verdict on the insurance company's affirmative defenses in this case was inappropriate and is due to be reversed. Under the scintilla rule, the entire evidence must be viewed in a light favorable to the opponent of the motion, and a question must go to the jury if the evidence, or any reasonable inference arising therefrom, furnishes the smallest trace of support for his theory. Alabama Power Company v.Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Kilcrease v.Harris, 288 Ala. 245, 259 So.2d 797 (1972).
After reviewing the evidence and arguments of both sides in this case, we find that there is at least a reasonable inference arising from the evidence that the insured willfully burned the property covered by the policy. For this reason, the judgment of the trial court directing a verdict on the insurance company's affirmative defenses was erroneous and is due to be reversed.
The insurance company, on appeal, also claims that the trial court erred in allowing testimony pertaining to the value of certain improvements that were not the improvements *Page 903 
for which the damage was claimed, and that the trial court erred in denying its motion for a new trial. We do not address either of these issues on this appeal because we have reversed the judgment of the trial court on the central issue.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.