Ben DEMPSEY and Jane B. Dempsey,
Plaintiffs-Appellees,

v.

AUTO OWNERS INSURANCE
COMPANY, a corporation,
Defendant-Appellant.

No. 82–7133.

United States Court of Appeals,
Eleventh Circuit.

Oct. 17, 1983.

John H. Morrow, Macbeth Wagnon, Jr., Birmingham, Ala., for defendant-appellant.

Stephen D. Heninger, Alex W. Newton, Birmingham, Ala., for plaintiffs-appellees.

Before HATCHETT and CLARK, Circuit Judges and SCOTT *, District Judge.

PER CURIAM:

In this diversity case, we review a jury verdict of $3.1 million resulting from a fire loss claim, a "bad faith refusal to pay" tort claim, and punitive damages. We find the award excessive.

FACTS

Ben and Jane Dempsey lived in Eufaula, Alabama, and insured their home with Auto Owners Insurance Company (Auto Owners). On August 3, 1978, during the pre-dawn hours, fire destroyed their home. At the time of the fire, the house was unoccupied and listed for sale. When the house burned, Jane Dempsey and the Dempsey children were vacationing in Florida; Ben Dempsey, a vice-president at Eufaula Bank and Trust Co., was in Eufaula. State fire marshals and company investigators failed to uncover any evidence of arson or misconduct by the Dempseys that could have caused the fire. The investigation did, however, reveal that Ben Dempsey lied about his whereabouts on the night of the fire. Instead of indicating that he spent the night with a female friend across the lake from his house on the night of the fire, Ben Dempsey initially stated that he spent the night with a male friend on the other side of town from the house. He made the false statement during questioning by insurance company investigators. The truth was voluntarily revealed "off the record" to an independent investigator hired by Auto Owners.

The investigation also revealed that Dempsey had substantial debts at the time of the fire, including a $115,000 note secured by a second mortgage on his home. L.V. Dean, president of the bank where Dempsey was employed, held the note. Auto Owners paid the Dempsey's first mortgage of $46,000, leaving approximately $96,000 of additional liability on the claim.

In order to satisfy the remainder of the claim, Auto Owners offered to purchase Dean's $115,000 note. If the note could be purchased, Auto Owners would have paid the policy limits and the Dempseys would owe Auto Owners $19,000 (the difference between $115,000 and $96,000). In a further effort to "satisfy" the Dempsey's claim, Auto Owners hired a hitchhiker for $340 that its agents met along a highway near Eufaula. The hitchhiker was hired to "dig up" information on Dempsey. When the hitchhiker's investigation proved fruitless, Auto Owners sought to retrieve its $340.

Dempsey's diversity action sought a policy claim for fire loss, a tort claim for bad faith refusal to pay the claim, and punitive damages. Auto Owners defended the suit alleging material misrepresentations after the loss, and arson. Upon the Dempseys's motion, the trial court excluded arson from jury consideration. The jury rejected Auto Owners's misrepresentation defense and returned a verdict in favor of the Dempseys for $3.1 million. Auto Owners responded by filing motions for judgment notwithstanding the verdict and for new trial. The district court denied the motions.

Auto Owners presents several issues for resolution. It contends: (1) that the trial court erred in ruling that an arson defense, supported only by circumstantial evidence, must exclude every other reasonable hypothesis before being submitted to a jury; (2) that the court erred in refusing to grant Auto Owners's motion for directed verdict based on Ben Dempsey's material misrepresentation as to his whereabouts at the time of the fire; (3) that the trial court should have concluded as a matter of law that there was a good faith basis for Auto Owners's refusal to pay the claim; (4) that the court erred in not setting aside the verdict; (5) that the court erred in refusing to admit into evidence the fact that Dempsey was under investigation for bank fraud and would probably be indicted; and (6) that

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, was a member of the panel that heard oral arguments but due to his death on May 12, 1983 did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

the court erred in refusing to grant a new trial.

## CONTROLLING PRINCIPLES

■ In this insurance contract case, state law governs. 43 Am.Jur.2d, *Insurance* § 321 (1982). Alabama law is controlling. Since the district court disposed of Auto Owners's arson defense by directed verdict, the standard of review on appeal is demanding. *Cora Pub, Inc. v. Continental Casualty Co.,* 619 F.2d 482, 484 (5th Cir. 1980). A directed verdict is appropriate only when there can be but one reasonable conclusion as to the verdict. *Smith v. Tennessee Valley Authority,* 699 F.2d 1043, 1045 (11th Cir.1963). In making this determination, the court must examine the whole record in a light most favorable to the party opposing the motion. 699 F.2d at 1045.

## ARSON DEFENSE

■ Under Alabama law, in order to establish a prima facie case of arson for purposes of denying coverage under a fire policy, the party bearing the burden must prove (1) motive; (2) opportunity; and (3) incendiary cause of fire which would allow reasonable men to conclude that the insured was guilty of the burning. *Great Southwest Fire Ins. Co. v. Stone,* 402 So.2d 899, 900 (Ala.1981); *see Cora Pub Inc.,* 619 F.2d 482, 485. It is not necessary for the insurer to prove the defense of arson beyond all reasonable doubt; a preponderance of the evidence is sufficient. *Stone,* 402 So.2d at 900. If the inferences are not too remote, proof of arson in Alabama is governed under the scintilla rule. 402 So.2d at 900. "Under the scintilla rule, the entire evidence must be viewed in a light most favorable to the opponent of the motion, and [the] question must go to the jury if the evidence, or any reasonable inference arising therefrom, furnishes the smallest trace of support for his theory." 402 So.2d at 902. We are mindful, however, that in diversity cases whether a given question of fact is to be resolved by the judge or jury is controlled by federal law. *Boeing v. Shipman,* 411 F.2d 365, 369 (5th Cir.1969). The

difficult problem emerges when we are forced to distinguish between ascertaining a rule of decision which is governed by state law or a given question of fact which federal law controls. 5A J. Moore's Federal Practice, ¶ 50.06 (2d ed. 1982). In this instance, a review of the record reveals that the problem presented by Auto Owners's arson defense is whether the facts satisfied Alabama's requirements of arson. We find that they do not.

■ The record in this case reveals that the evidence presented by Auto Owners was at best circumstantial, and failed to satisfy the elements necessary to submit arson as a defense. Motive was circumstantially presented by showing the Dempseys's excessive debt. Opportunity was inferred from Dempsey's presence nearby and convenient access by boat. The incendiary cause element was attempted on the weakest of evidence. Evidence produced on this element merely showed that the expert witness could not determine the cause of the fire. The record shows that the state fire marshal and other insurance investigators found no evidence of arson. The evidence does not furnish the smallest trace of support for Auto Owners's theory of arson. Thus, we conclude that the record indicates no reversible error resulted from the district court's exclusion of the issue of arson from the jury's consideration. All parties now agree that the trial court used the wrong standard or misread the leading case on the question of submitting the arson defense to the jury. The parties participated in the misapplication of this precedent. With the record before us, we conclude that under Alabama law the elements of arson were not satisfied and thus, that defense should not have been submitted to the jury. No credible evidence in the record supports arson as a defense.

■ Auto Owners argues that the district court erred in denying its motions for directed verdict and judgment notwithstanding the verdict due to Dempsey's false statement concerning his whereabouts at the time of the fire. Auto Owners argues that the false statement voids the policy

under its misrepresentation provisions.[1] Under Alabama law, an intentional misrepresentation by an insured of material facts relied upon by the insurer may permit the insurer to void a policy. *Bankers Life & Casualty Co. v. Long,* 345 So.2d 1321 (Ala. 1977). The *Long* case, however, also noted: "The well recognized exception to this rule is: the policy is not voided if the insurer knows the true facts, or the falsity of the statements, or has sufficient indications that would put a prudent person on notice so as to induce an inquiry which, if done with reasonable thoroughness would reveal the truth." 345 So.2d at 1323. A three-part test has been established for a misrepresentation defense by the insured. The insurer must show (1) that the statements were false and made with intent to deceive; (2) that they related to matters materially affecting the risk; and (3) that the insurer relied upon the statements to its detriment. *Heralds of Liberty v. Collins,* 216 Ala. 1, 110 So. 283 (1926); *Union Mutual Stock Life Ins. Co. v. Wilkerson,* 367 So.2d 964 (Ala. Civ.App.), *cert. denied,* 367 So.2d 971 (1978). These questions are traditionally reserved for the jury. *Lumberman's Mutual Casualty Co. v. Myrick,* 596 F.2d 1313 (5th Cir. 1979).

■ The record reveals that the district court acknowledged that a material misrepresentation after the loss would void the policy. The court, however, felt that Dempsey's false statement as to his whereabouts on the night of the fire was immaterial. Nothing in the record reveals that Auto Owners relied on Dempsey's original misstatement to its detriment. Despite a lack of showing of these elements, the district court submitted the misrepresentation issue to the jury under proper instructions. Upon submission, the jury found no material misrepresentations. The record sustains the jury's finding.

### BAD FAITH DEFENSE

Auto Owners's also attacks Dempsey's bad faith claim. The "bad faith refusal" claim is relatively new. *National Savings Life Insurance Co. v. Dutton,* 419 So.2d 1357, 1362 (Ala.1982). In this case, the court submitted the issue of "bad faith refusal" to the jury. The jury found against Auto Owners. Auto Owners argues that *Dutton* requires a reversal of the court's submission of the issue to the jury. Auto Owners premises its *Dutton* argument on the ground that the court can not submit a bad faith case to a jury unless the insured is entitled to a directed verdict on the contract claim. We disagree with Auto Owners's reading of *Dutton.*

■ An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. *National Security Fire & Casualty Co. v. Bowen,* 417 So.2d 179, 183 (Ala.1982). No lawful basis means that the insurer lacks a legitimate or arguable reason for failing to pay the claim. *Gulf Atlantic Life Insurance Co. v. Barnes,* 405 So.2d 916, 924 (Ala.1981). When a claim is "fairly debatable," the insurer is entitled to debate it whether the debate concerns a matter of fact or law. *Barnes,* 405 So.2d at 924. The plaintiff, in a "bad faith refusal" case, has the burden of proving:

(a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for the refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

In short, plaintiff must go beyond a mere showing of non-payment and prove

---

**1.** The misrepresentation cases cited by Auto Owners apply to the inception of the contract and not to misrepresentation of facts after the loss. Since both parties cite no other germane cases, we proceed with these cases in deciding Auto Owners's theory of misrepresentation.

a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*Bowen,* 417 So.2d at 183. In *Dutton,* the court stated:

In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show *that the plaintiff is entitled to a directed verdict on the contract claim* and thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury. [Emphasis added.]

*Dutton,* 419 So.2d at 1362. It is this underlined language that Auto Owners seizes in advancing its argument that the district court erred in submitting the "bad faith" issue to the jury. In a more recent case, however, the Alabama Supreme Court has clarified this language stating:

This 'directed verdict on the contract claim' test is not to be read as requiring, in every case and under all circumstances, that the tort claim be barred unless the trial court has literally granted plaintiff's motion for a directed verdict on the contract. Indeed, the words 'entitled to a directed verdict' so indicate. Rather, this test is intended as an objective standard by which to measure plaintiff's compliance with his burden of proving that defendant's denial of payment was without any reasonable basis either in fact or law; *i.e.,* that defendant's defense to the contract claim is devoid of any triable issue of fact or reasonably arguable question of law.

Safeco Insurance Co. of America v. Sims, 435 So.2d 1219, 1223 (1982, Ala.). The standard for testing a bad faith claim is not found in either the adjudication of a justiciable controversy or the judgment on the merits of a contract claim. We conclude by stating that whether there is a bad faith claim will be determined by of [sic] the facts and circumstances of each case. [Id. at 1223].

The categorical statement of *Dutton* was not intended to apply in all circumstances, but was qualified to apply in "normal case[s]".

■ The district court was correct in submitting Dempsey's bad faith claim to the jury. The record reveals a number of facts which would seem indicative of Auto Owners's bad faith. Hiring a hitchhiker to conduct an investigation, and offering to purchase Dempsey's debt from his creditor seems far beyond an attempt to fulfill an obligation in good faith. Consideration of such facts and circumstances is clearly within the providence of the jury.

Even assuming Auto Owners is correct in its interpretation of *Dutton,* we still fail to find merit in its argument. When the district court directed a verdict against Auto Owners on its arson defense, the court effectively validated Dempsey's contract claim. Since the court found no evidence of arson, Auto Owners's only defense to the validity of Dempsey's contract was nullified; thus effectively providing the requisite for a directed verdict on the contract claim for purposes of maintaining a bad faith action. Thus, the district court through its actions in effect foreclosed the *Dutton* argument.

■ Auto Owners contends that the trial court erred in denying its motion for new trial based on excessiveness of the verdict. Alabama law allows recovery of punitive damages when the plaintiff shows that the acts complained of were committed with maliciousness, willfulness, or wanton and reckless disregard for the rights of others. *Gulf Atlantic Life Insurance Co. v. Barnes,* 405 So.2d 916 (Ala.1981). Recoverable damages may include mental distress and economic loss. *Chavers v. National Security Fire & Casualty Co.,* 405 So.2d 1 (Ala.1981). The amount of the punitive damages is left largely to the discretion of

the jury; however, this discretion is not absolute. *Lowe v. General Motors Corp.*, 624 F.2d 1373 (5th Cir.1980). The court should reduce a verdict which is not merely overly generous, but so excessive that it demonstrates "bias, passion, prejudice, corruption, or other improper motives or causes." *Airheart v. Green*, 267 Ala. 689, 104 So.2d 687, 690 (1958). *Barnes* stresses that not every case of bad faith refusal to pay a claim justifies an award of punitive damages. The record in this case does justify an award of punitive damages. We are not convinced, however, that there is justification for an award of $3.1 million. This award is generous; it is excessive; it is based in part on bias, passion, or other improper causes. The trial court should have granted a new trial or taken other appropriate action.

Auto Owners's argument on its motion in limine and other issues are inconsequential; if accepted, the error would be harmless. Accordingly, the case is remanded to the trial court with directions to require within thirty days a remittitur in the amount of $1.5 million as a condition to the denial of a new trial. *Gulf Atlantic Life Ins. Co. v. Barnes,* 405 So.2d 916 (Ala.1981).

REVERSED and REMANDED.