EDWARD N. SCRUGGS, Retired Circuit Judge.
This is a franchise royalty case.
A.B. Coleman Enterprises (Coleman) was in the business of franchising barbeque establishments. Its “Coleman’s Hot Pit Bar-B-Que” signs, together with other signs and logos, were copyrighted.
In May 1976, Coleman franchised the use of its system to L.N. & J. (the partnership) in Hamilton, Alabama, for a twenty-year period. The presently pertinent parts of the franchise agreement were that the partnership would pay to Coleman each month three percent of their gross sale proceeds as service fees. The partnership could not sell, assign, transfer, convey or encumber the franchise agreement or any right or interest therein, unless the written consent of Coleman was first obtained. Upon termination of the franchise, the partnership was required to forthwith discontinue the use of the Coleman name, marks, signs and printed goods, and the partnership could not thereafter operate or do business under any name or in any manner that might tend to give to the general, public the impression that the franchise was still in force or that the partnership was still connected with Coleman.
Coleman sued the partnership's three partners for a declaratory judgment to de *1250 termine the rights of the parties under the franchise agreement and to establish the amount of royalties due to Coleman by them. At the conclusion of a jury trial, the circuit court granted a motion for a directed verdict for Coleman in the amount of $6,249.36. The propriety of that ruling is the cornerstone issue upon this appeal by the partners, since another question may be here considered as an integral part of this one issue.
We have limited the statement of the case and shall limit the summary of the facts to that issue.
Shortly after the execution of the franchise agreement, a sign was placed upon the top front of the partnership’s building, and another sign was erected in front of it. A Coleman menu board was located inside. Those signs and board included the Coleman name and certain copyrighted logos and they remained in place during the entire time that was in controversy.
The partnership would send a daily report of sales to Coleman, who would bill the partnership for the three percent royalty once a month and, thereafter, the partnership would remit to Coleman the amount due. They were current as to all royalty payments when Sue Truelove began to operate the business in the late spring or early summer of 1978, and she paid all amounts due under the franchise until she quit that operation after about nine months. The partnership reopened the business in late 1980 or early 1981.
The president of Coleman testified that he gave permission to the partnership to assign the Hamilton shop and franchise to Truelove but that he did not relieve the partners from their liability under the franchise and that Coleman never terminated the franchise agreement with the partnership. Coleman’s president instructed his assistant to give Truelove an assignment of the franchise, but he does not know if she later made any reassignment to the partnership.
Two of the partners admitted that after the partnership reopened the Hamilton shop, they each told Coleman’s president and its franchise director in substance that the partnership would resume the royalty payments as soon as they started making some money. They never told Coleman that they considered the franchise agreement to have terminated when Truelove started operating the shop, and at no time did they ever receive anything from Coleman which released them from the franchise agreement. The partnership just assumed that their franchise agreement with Coleman ended when Truelove started operating that shop.
After Truelove ceased running that business, the partnership never paid any of the franchise royalty. It was not disputed that a total of $6,249.36 was due if the royalty should have been paid by the partnership to Coleman from the time that they reopened the business until in 1983, the end of the period in controversy.
The scintilla rule is the standard which must be used to determine the propriety of granting a motion for a directed verdict, and it is also our standard upon review. Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala.1979). Under the scintilla rule, all of the evidence must be considered in a light which is favorable to the opponent of the motion, and an issue must be allowed to be decided by the jury if the evidence, or any reasonable inference therefrom, furnishes the smallest trace of support for such opponent’s theory. Great Southwest Fire Insurance Co. v. Stone, 402 So.2d 899 (Ala.1981). However, where there are no controverted issues of material fact upon which reasonable persons could differ, a directed verdict may properly be granted. Plaisance v. Yelder, 408 So.2d 136 (Ala.Civ.App.1981).
The testimony that the partnership assumed that the franchise agreement terminated when Truelove began to operate the shop does not constitute a scintilla of evidence that it was actually terminated at that time, for such evidence was mere conjecture and speculation and was insufficient to warrant a submission of the issue to the jury. Roberts v. Carroll, 377 So.2d *1251 944 (Ala.1979). The fact that Truelove signed some instruments is likewise inadequate evidence of a contract termination, in the absence of proof of the contents of those documents.
When all of the evidence is considered, there was no evidence that the agreement was not in force and effect during the time which was in controversy. As a matter of fact, the partners evidenced that they recognized its original or reinstated validity and effectiveness by their assurances that they would resume the royalty payments to Coleman, by their continued use of the Coleman signs and logos in their business and by their failure to protest that they considered that the agreement was terminated.
In short, after a careful review of all of the evidence and of the arguments which were made by most capable counsel for both sides and after applying the above rules of review thereto, we are convinced that the trial court properly granted the directed verdict in Coleman’s favor. We affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS, serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama 1975, and this opinion is hereby adopted as that of this court.
AFFIRMED.
All the Judges concur.