[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10358

Non-Argument Calendar

_____

FRANKENMUTH MUTUAL INSURANCE COMPANY,

Plaintiff-Appellant,

*versus*

BROWN'S CLEARING, INC.,
COURTNEY FORD,
BREON FORD,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

D.C. Docket No. 2:20-cv-00576-ECM-JTA

————————————

Before WILSON, LUCK, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This is a duty to defend insurance dispute brought by the insurer, Frankenmuth Mutual Insurance Company ("Frankenmuth"), seeking to reverse the district court's determination that its insured, Brown's Clearing, Inc. ("Brown's Clearing"), is entitled to coverage under its policy. Frankenmuth, a Michigan corporation, appeals the district court's order granting summary judgment in favor of Brown's Clearing, Courtney Ford, and Breon Ford (collectively, "Appellees"). For the reasons discussed below, we affirm the district court's judgment.

## I.     FACTUAL AND PROCEDURAL HISTORY

### A.     The Insurance Policy

Brown's Clearing is a land-clearing business incorporated in Alabama and registered to do business in Georgia. Kelley Brown and Steve Brown, a married couple, own Brown's Clearing. Frankenmuth is an insurance company licensed to issue insurance policies in Alabama. On March 14, 2017, Frankenmuth issued a Commercial General Liability policy to Brown's Clearing, effective from March 13, 2017, through March 13, 2018 (the "Policy"). On February 6, 2018, Frankenmuth and Brown's Clearing renewed the Policy for another year, from March 13, 2018, through March 13, 2019.

The Policy provided general liability coverage and additional umbrella coverage. Pursuant to Section I of the Policy, Frankenmuth agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Section I also provides that Frankenmuth has the "right and duty to defend the insured against any 'suit' seeking those damages." Further explaining those conditions, Section IV of the Policy provides:

> **Section IV – Commercial General Liability Conditions**
>
> **2. Duties in The Event of Occurrence, Offense, Claim Or Suit**
>
> > a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> >
> > > (1) How, when and where the "occurrence" or offense took place;
> > >
> > > (2) The names and addresses of any injured persons and witnesses; and
> > >
> > > (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
> >
> > b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

. . . .

The Commercial Liability Plus endorsement modifies the terms of the Policy and provides as follows:

**4. Duties in the Event of Occurrence, Claim or Suit**

a. The requirement in condition 2.a. that you must see to it that we receive notice of an "occurrence" applies only when an "occurrence" is known to:

(1) You, if you are an individual;

(2) A partner, if you are a partnership; or

(3) An executive officer or insurance manager if you are a corporation.

b. The requirement in condition 2.b. that you must see to it that we receive notice of a claim or "suit" will not be considered breached unless the breach occurs after such claim or "suit" is known to:

(1) You, if you are an individual;

(2) A partner, if you are a partnership; or

(3) An executive officer or insurance manager, if you are a corporation.

Similarly, the Commercial Liability Umbrella Coverage states that Frankenmuth "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies." Pursuant to Section IV of the Umbrella Coverage, the insured must notify Frankenmuth of occurrences that may result in a claim and of suits brought against the insured "as soon as practicable." The Umbrella Coverage also states that:

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

The Commercial General Liability contains the same language.

The Policy defines "occurrence" as "an accident." The Policy also defines "executive officer" as "a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document."

### B.    The Underlying Action and Coverage Dispute

On July 20, 2018, Courtney Ford was travelling on Interstate 75 in Bartow County, Georgia. While she was driving her car, workers were cutting trees along the side of the interstate. Suddenly, a tree limb struck the windshield of Courtney's car and pierced the vehicle, resulting in injuries. Brown's Clearing did not have employees cutting trees on Interstate 75, but it had hired S&S Diesel as a subcontractor to perform those services. No one from S&S Diesel ever told anyone from Brown's Clearing about that accident.

Then, on January 24, 2019, Courtney and Breon Ford ("the Fords") sued Gunnison Tree Specialists, Inc. ("Gunnison"), and Georgia Power in the State Court of Cobb County, Georgia, alleging that the companies' negligence caused the tree limb to hit Courtney's car, resulting in injuries. The Fords sought compensatory, special, and punitive damages, along with a claim brought by Breon Ford for loss of consortium.

On February 11, 2019, during the discovery phase of the Ford lawsuit, Andrew Horowitz, an attorney representing Gunnison and Georgia Power, emailed Kelley Brown about a "request

for documents." After Brown asked for an explanation, Horowitz responded on February 12, 2019:

> I'm defending Georgia Power and Gunnison Tree in a suit filed by a motorist who claims that she was injured on 7/20/18. I understand that Brown's Clearing had a tree crew alongside I-75 North that day, doing work for GDOT around Mile Marker 294. I wanted to give someone at Brown's Clearing a heads-up that I was about to serve a records request on your company's GA registered agent. The request generally seeks docs relating to Brown's Clearing's work in that area between 7/18 and 7/20/18. When we serve the request, I'd be happy to send you a copy. My contact info is below, so feel free to call anytime if you or another Brown's Clearing rep wants to talk.

On February 15, 2019, Brown's Clearing provided the requested information, showing where their equipment was located along Interstate 75 on the day of the accident. Kelley Brown testified that she "thought they wanted a witness or something, and so [she] just sent him the log."

On May 10, 2019, the Fords filed an amended complaint in the underlying state court action against Gunnison and Georgia Power that added Brown's Clearing as a defendant. On May 16, 2019, a process server tried to serve Brown's Clearing's authorized agent of process, Registered Agents, Inc. ("Registered Agents"), with summons, the amended complaint, interrogatories, and a request for production. Registered Agents then emailed Kelley

8                    Opinion of the Court                    22-10358

Brown at her email address on file with Registered Agents, notify-ing her of a delivered service of process document and a prompt to log into the computer system and review the document. The next day, because the documents had not been reviewed, Registered Agents sent another email stating that the "document we uploaded on your company's behalf could be really important and we want to make sure you see it." Two days later, another email was sent stating the same. On May 21, 2019, Registered Agents sent another email, stating:

> It's been 5 days and unfortunately, you haven't logged into your account to look at it. We're email-ing it to you as a PDF attached to this email. We'd prefer you login to your online account because we believe that's a more secure way to deliver docu-ments, but maybe you don't want to do that and we don't want to slow you down. So here it is.

Finally, Registered Agents mailed a physical letter to Brown's Clearing requesting that someone open the account and view the documents.

Brown's Clearing was never served by hand or by mail with a copy of the amended complaint. In 2019, Kelley Brown, who served as a kind of office manager for the business, did not know what the phrase "service of process" meant. She did not open any of the four computer generated emails because she thought they looked like all previous emails she received from that account, which were all invoice and billing related emails. Brown had re-ceived over one hundred other emails from the Registered Agent

account between 2017 and 2020, almost all of which were invoices. Brown's Clearing and Steve and Kelley Brown had never been sued before either as a business or personally.

Unsurprisingly, Brown's Clearing did not respond to the state court amended complaint, and the Fords filed a motion for entry of default judgment in the underlying action on July 19, 2019. That same day, Horowitz emailed Kelley Brown notifying her of the motion for default judgment and suggesting that she contact Brown's Clearing's liability carrier to let them know of the lawsuit. Kelley Brown stated that this email from Horowitz was the first time she had ever heard of the lawsuit. The Georgia state court denied the Fords' motion for default judgment, finding that service was "without effect" because the process server was not properly appointed. Several days after she received the email from Horowitz, Kelley Brown reported a claim online to Frankenmuth regarding the underlying action. Randy Eichhorn, a claim senior litigation examiner with Frankenmuth, stated that Kelley Brown reported a claim to Frankenmuth on July 26, 2019.

On August 7, 2020, Frankenmuth filed a complaint for declaratory judgment against Brown's Clearing, seeking a judicial determination about whether Frankenmuth had a duty to defend and indemnify Brown's Clearing in the underlying litigation before the Georgia state court. On September 20, 2020, the Fords filed a motion for joinder as an indispensable party, which the district court granted. The parties subsequently cross-moved for summary judgment. Brown's Clearing and the Fords argued: (1) that Brown's

Clearing did not know about the underlying lawsuit until July 19, 2019, notified Frankenmuth about the action as soon as practicable, and is therefore entitled to coverage under the Policy; and (2) that economic losses are covered under the Policy. Frankenmuth argued: (1) that Brown's Clearing knew about the accident in February 2019 and the underlying action in May 2019; (2) that Brown's Clearing failed to notify Frankenmuth "as soon as practicable" pursuant to the Policy; and (3) that Brown's Clearing failed to give Frankenmuth "written notice" as it failed to forward the summons and legal papers.

On January 4, 2022, the district court granted summary judgment in favor of Brown's Clearing and the Fords, agreeing with the position of Brown's Clearing. In reaching that conclusion, the court interpreted the word "known" in the Policy's notice requirements to require a Brown's Clearing executive officer to have actual knowledge of the occurrence, claim, or suit. The court explained that "[v]iewing the evidence in the light most favorable to Frankenmuth and drawing all reasonable inferences in its favor," no reasonable jury could conclude that the e-mail.

exchange with Horowitz or a certificate of liability insurance as to the subcontractor demonstrated that Brown's Clearing had actual knowledge of the accident in February 2019. The court also found that Brown's Clearing provided written notice of the claim and did so "as soon as practicable."

Frankenmuth timely appealed.

## II.    STANDARD OF REVIEW

We review *de novo* the resolution of cross-motions for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). In doing so, we apply the same standards used by the district court, assessing the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Ramji v. Hosp. Housekeeping Sys. LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021).

## III.    ANALYSIS

On appeal, Frankenmuth argues that Brown's Clearing is not entitled to coverage under the Policy based on its breach of duties after loss, particularly because Brown's Clearing failed to notify Frankenmuth of the underlying action in a timely fashion. Appellees argue that the district court was correct in ruling that Frankenmuth owed a duty to defend and indemnity because Brown's Clearing did not have knowledge of the underlying action until July 19, 2019, after which notice was given to Frankenmuth soon enough after to comply with the terms of the Policy.

Under the Commercial General Liability Conditions section of the Policy, Brown's Clearing was required to "[s]ee to it that [Frankenmuth] is notified as soon as practicable of an 'occurrence' . . . which may result in a claim." Similarly, the Policy requires Brown's Clearing to "[n]otify [Frankenmuth] as soon as practicable" if a "claim or 'suit' is brought against any insured." Those conditions are breached only if Brown's Clearing failed to provide such

notice when "an 'occurrence' is *known* to . . . [a]n executive officer," or when a "claim or 'suit' is *known* to . . . [a]n executive officer." (Emphasis added). The parties primarily dispute the meaning of the word "known." Before determining whether Brown's Clearing complied with the obligations under the Policy, we must first resolve that dispute.

Construction of an insurance contract is a question of law we review *de novo*. *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998). The construction of insurance contracts is governed by substantive state law. *Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 559 (11th Cir. 1983); *see also Tech. Coating*, 157 F.3d at 844–45. In this case, the parties have agreed that Alabama substantive law applies. Insurance policies are contracts, and like other contracts, they are "governed by the general rules of contracts." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001). We must construe the policy to give effect to the intention of the parties. *Id.* Under Alabama law, "[i]f a word or phrase is not defined in [an insurance] policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Travelers Cas. & Sur. Co. v. Alabama Gas Corp.*, 117 So. 3d 695, 700 (Ala. 2012) (alteration in original) (quoting *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005)). "The court should not define words it is construing based on technical or legal terms." *Safeway Ins. Co.*, 912 So. 2d at 1143.

In the Policy, the notice requirement is triggered when a suit is "known" to an executive officer or insurance manager. "Known" is used as a verb in the past tense of "know", which is defined as "[t]o recognize, acknowledge, perceive." *Know, Oxford English Dictionary* (3d ed. 2010); *see also Known, Oxford English Dictionary* (3d ed. 2010) ("That has become an object of knowledge; that is or has been apprehended mentally; learned; familiar;"). Frankenmuth urges us to adopt a Merriam-Webster definition of "known" to mean "generally recognized". Such a definition implies not whether information is known to an individual but rather whether information is widely known among a certain population. Certainly, the Policy addresses whether an occurrence is specifically recognized by an individual or partner, not whether it is generally recognized. Instead, we agree with the district court's determination that, to an ordinary person, the word "known" means "actually known." If a fact is "known" to a person, it is reasonable to assume that person has actual knowledge of the fact.

As the district court noted, Frankenmuth and Brown's Clearing were free to contract with the phrases "should have known," "had reason to know," or "would be likely to have known," but they did not—rather, they chose the term, "known." We will not change the language of their agreement now. Additionally, while we find none, even if there existed a genuine ambiguity around the meaning of "known" in this contract, we would be directed to construe such ambiguity "liberally in respect to persons insured and strictly with respect to the insurer." *Crossett v.*

*St. Lous Fire & Marine Ins. Co.*, 269 So. 2d 869, 873 (Ala. 1972). For purposes of evaluating Brown's Clearing's compliance with the Policy, we will construe "known" to mean that an executive officer must have had actual knowledge of the occurrence, claim, or suit.

When did an executive officer of Brown's Clearing have actual knowledge of the underlying occurrence and action? Appellees contend that no executive officer at Brown's Clearing had actual knowledge of the underlying action before July 19, 2019, when Horowitz emailed Kelley Brown about the motion for default judgment. Frankenmuth argues that Brown's Clearing knew of the suit on May 16, 2019, when its authorized agent, Registered Agents, was served with process. According to Frankenmuth, because Registered Agents was served with process, Brown's Clearing "knew" of the lawsuit at the same time. Instead of wading into questions of agency law and constructive knowledge, as Frankenmuth suggests, we need only look at the language of the parties' agreement. The Policy does not state that a suit being "known" to a registered agent is imputed to an executive officer. In fact, the Policy explicitly states that the notice requirement is triggered "only" when a suit is "known" to certain individuals—"[a]n executive officer or insurance manager." Again, the parties could have added "registered agent" to that list, but they did not. Given the language of the Policy and the record, the district court was correct in finding that the date triggering Brown's Clearing's duty to provide notice to Frankenmuth was July 19, 2019.

22-10358               Opinion of the Court                    15

The next question before us is whether Brown's Clearing notified Frankenmuth "as soon as practicable," as required by the Policy. Kelley Brown gave notice of the underlying action to Frankenmuth seven days after learning about the suit, on July 26, 2019. Because Frankenmuth focuses on the reasonableness of the delay assuming Brown's Clearing had the obligation to notify starting May 16, 2019, Frankenmuth makes no argument that a seven-day delay would fail to meet the Policy's requirements. Thus, the delay between when Brown's Clearing triggered the notice requirement and when Brown's Clearing provided notice did not constitute breach of duty under the Policy.[1]

Frankenmuth also argues that Brown's Clearing violated the cooperation clauses in the Policy, referring to the provisions

---

[1] Frankenmuth also argues two points that may not have been properly preserved for appeal. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) First, Frankenmuth argues for the first time, beyond a footnote in its summary judgment briefing, that the mailbox rule applies to the letter sent by Registered Agents to Brown's Clearing, implying receipt. Even applying the mailbox rule, the letter only repeated the language from the emails and did not contain the actual complaint. So receipt of the letter would not impute knowledge on Brown's Clearing any more than the emails did. Second, Frankenmuth argues for the first time that willful blindness supports a finding of actual knowledge. Aside from arguing that Brown's Clearing cannot "wear 'blinders'" and claim ignorance, nowhere below did Frankenmuth argue that Brown's Clearing was engaged in willful blindness so as to impute actual knowledge. Thus, this argument is not properly before this Court. Even if it were, the record does not support an inference that Kelley Brown was deliberately ignoring occurrences and claim notices. Rather, she testified that she thought they were invoices.

requiring that the involved insured must "send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" Because Brown's Clearing was provided a copy of the summons and complaint via email on May 21, 2019, but did not send it to its insurer, Frankenmuth contends that Brown's Clearing breached these provisions and is therefore not entitled to defense or indemnification. That argument fails. First, even though the cooperation clauses do not explicitly mention a knowledge requirement, Frankenmuth's reading of the contract would imply a duty to provide information of which Brown's Clearing has no actual knowledge. Instead, a more logical understanding of the Policy as a whole reads the requirement that the insured send copies of any demands, notices, summonses or legal papers as an instruction on cooperation *after* a notice of an underlying occurrence or suit has been sent. Indeed, interpreting the Policy in a way to find that the parties agreed to require cooperation on a suit of which neither Frankenmuth nor Brown's Clearing had any awareness would be a bizarre conclusion. Second, the record shows that the summons and complaint were served in a failed attempt to effect proper service and were thus "without effect." If the summons and complaint were not properly received by Brown's Clearing, they could not have had a duty to send them to Frankenmuth.

Frankenmuth's final argument, made in one paragraph at the end of its brief, is that Brown's Clearing violated the Policy's mandate that "[y]ou must see to it that we receive written notice

of the claim or 'suit' as soon as possible." According to Frankenmuth, Brown's Clearing violated this provision because it "provided no evidence that it provided written notice to Frankenmuth––i.e. never provided a copy of the written notice of proof." Frankenmuth appears to argue that because Kelley Brown's testified that she submitted the claim "online," it was not "written notice" pursuant to the policy. Frankenmuth points to no evidence that Brown's Clearing's notice was not in writing nor in the incorrect format. Thus, there is no genuine dispute about whether Brown's Clearing provided written notice and no violation of the Policy. Thus, this argument must fail.

Accordingly, the district court did not err in finding that Brown's Clearing did not violate any provisions of the Policy and was thus entitled to coverage under that Policy with Frankenmuth.

## IV. CONCLUSION

For all these reasons, we affirm the district court's order granting summary judgment for Brown's Clearing and the Fords.

**AFFIRMED.**